FILED

OCT 0 9 2007

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

CHRISTOPHER HELMUT KULIK,

    Debtor.
_____/

Case No. 6:05-bk-03034-ABB
Chapter 7

ROBIN LAWLER,

    Plaintiff,

vs.

CHRISTOPHER HELMUT KULIK,

    Defendant.
_____/

Adv. Pro. No. 6:05-ap-00173-ABB

## MEMORANDUM OPINION

This matter came before the Court on remand pursuant to the Order entered on August 27, 2007 by the United States District Court for the Middle District of Florida, Orlando Division, for further proceedings to determine whether the Circuit Court of Loudoun County, Virginia, which issued a default judgment in favor of Robin Lawler, the Plaintiff herein ("Plaintiff"), and against Christopher Kulik, the Debtor and Defendant herein ("Debtor"), had personal jurisdiction over the Debtor. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live testimony and argument on February 28, 2006 and September 11, 2006, and being otherwise fully advised in the premises.

## **FINDINGS OF FACT**

The Plaintiff, a former employee of a business owned by the Debtor in Northern Virginia, instituted litigation against the Debtor relating to her employment termination in the Circuit Court of Loudoun County, Virginia ("State Court") captioned <u>Robin M. Lawler v. Christopher Helmut Kulik</u>, At Law No. CL00032740-00 ("State Court Proceeding"), through the filing of a Motion for Judgment. The State Court entered an Order on February 11, 2005 ("Judgment Order") against the Debtor by default awarding the Plaintiff $1,250,000.00.[1]

The Plaintiff contends the Judgment Order debt is nondischargeable and collateral estoppel prevents the Debtor from challenging the Judgment Order. The Debtor asserts the Judgment Order cannot be enforced against him because the State Court did not have personal jurisdiction over him. This Court, pursuant to controlling case law, may decide whether the Judgment Order is supported by personal jurisdiction.

### *Virginia State Court Proceeding*

The Plaintiff instituted the State Court Proceeding against the Debtor in October 2004 by filing a Motion for Judgment. She filled out and executed on October 27, 2004 an Affidavit for Service of Process on the Secretary of the Commonwealth ("Affidavit")

---

[1] The one-page Judgment Order provides:

> This case came to be heard on February 11, 2005 upon the Court's January 7, 2005 order of judgment in favor of the Plaintiff, Robin Lawler, upon the [P]laintiff's notice, sent according to law, of the February 11, 2005 hearing at which hearing the Plaintiff would move the Court for an award of damages* upon the evidence heard <u>ore tenus</u> and the exhibits offered by the Plaintiff, and was argued by the Plaintiff, *pro se*.
>
> UPON CONSIDERATION WHEREOF, the Court does award the Plaintiff Robin Lawler judgment against the Defendant Christopher Kulik in the amount of $900,000 for actual damages and in the amount of $350,000 for punitive damages, together with her costs expended herein."

It also contains a handwritten statement inserted by Judge James H. Chamblin in the lower left hand corner providing: "* for intentional infliction of emotional distress." Doc. No. 50, Plaintiff's Exh. No. 3.

asserting the Debtor "is a non-resident of the Commonwealth of Virginia" having a "last known address" of "206 E Shawnee Street, Paola, Kansas 66071."[2]

The Secretary of the Commonwealth, as the Virginia statutory agent for service of process and pursuant to the Plaintiff's Affidavit, mailed the Notice of Motion for Judgment and Motion for Judgment to the Debtor via certified mail, return receipt requested, at the address of 206 E. Shawnee Street, Paola, Kansas 66071 on November 12, 2004.[3] The Plaintiff did not produce the green return receipt card evidencing whether the mailing made by the Secretary of the Commonwealth was received by the Debtor or by anyone else, or rejected.

The Debtor did not respond to the Motion for Judgment or make an appearance in the State Court Proceeding and the Plaintiff's motion for default judgment was granted by Order entered on January 7, 2005.[4] The January 7, 2005 Order set a damages hearing for February 11, 2005 and contains the notation: "Defendant phoned the Circuit Court on 1/7/05 stating he did not receive papers advising him of the lawsuit against him. He did not leave a phone number or address. The Clerk shall forthwith mail a copy to the defendant at the address shown on the Motion for Judgment."[5]

The Debtor asserts he first learned of the State Court Proceeding on January 7, 2005 when he called the State Court to inquire about any pending cases, which information he needed in connection with obtaining a realtor license and possibly a construction license:

---

[2] Doc. No. 50, Plaintiff's Exh. No. 1.
[3] Id.
[4] Doc. No. 50, Plaintiff's Exh. No. 2.
[5] Id.

> Q    Can you tell this Court what prompted your phone call to that courthouse on that particular morning?
>
> A    I was trying to obtain my real estate license and also thinking about getting my construction license here in Florida . . . In Florida here you can't have any cases or anything open in order to obtain a license like that. So I was calling the Court to find out what exactly the cases that I had, all of them, the fourteen or so that I tried with her, just to make sure that nothing else was lying there and also to get paperwork back on the very last case that we had had because I had never received paperwork on it.[6]

The Debtor contends his call to the State Court on the morning of the hearing on the Plaintiff's default motion "was pure coincidence."[7] He asserts he never received any papers relating to the State Court Proceeding and no evidence was presented refuting that contention.[8]

The State Court mailed a copy of the January 7, 2005 Order to the Debtor at "206 E Shawnee Street, Paola, Kansas 66071." The mailing was returned to the State Court with the handwritten notation, "Do not know this person. Return to sender." It is unknown who wrote the notation. The State Court conducted a damages hearing, without a jury, on February 11, 2005 at which only the Plaintiff appeared, *pro se*, and subsequently entered the Judgment Order. The Debtor did not appeal or challenge the Judgment Order in the Virginia courts.

---

[6] February 28, 2006 transcript at p. 14, ll. 6-21. Plaintiff, prepetition, instituted several lawsuits against the Debtor, his businesses, and, in at least one instance, his wife Melissa Kulik. At least two actions were pending in the Circuit Court for the County of Loudoun, Virginia: the aforementioned State Court Proceeding and Robin M. Lawler v. Deadlinz Construction, LLC, Christopher Kulik, and Melissa Kulik, At Law No. 29739 (*see* Doc. No. 26 in the Debtor's main case). It is unknown if there were suits pending in other courts or if the Debtor made calls to any courts other than the Loudoun Circuit Court.

[7] *Id.* at p. 22, ll. 1-7; ll. 22-25, p. 15, ll. 1-2: Question: "When did you first learn of this particular case?" Answer: "That day in time." Question: "How did you learn of it?" Answer: "On the telephone call when I called, when I spoke to the court clerk."

[8] Doc. No. 50, Plaintiff's Exh. 5 at p. 15.

4

## *The Debtor's Whereabouts*

The Debtor moved several times during 2004 through 2005. He lived in the Northern Virginia area until he and his wife separated on or about August 14, 2004 and then lived in various places including Patapsco River, Maryland; 13201 Heather Moss Drive, Apartment 1510, Orlando, Florida 32837 (which address appears on his Petition); a friend's home at 402 Herlong Court, Brandon, Florida 33511; and his parents' home at 169 Green Palm Road, Rockaway, New Jersey. He would not or could not provide a specific chronology of each state and town he lived in during that period.[9]

The Debtor's testimony regarding where his *wife*, Melissa Kulik, resided from August 2004 through 2005 was inconsistent. He admitted he had falsely testified his wife had never lived in Paola, Kansas.[10] She and their three daughters lived in Paola, Kansas for a brief period in 2004 during a marital separation. The Debtor's testimony regarding *his* places of residence, although lacking in chronological specificity, was consistent.[11] He left Virginia in August 2004 after he and his wife separated. His wife has family in Kansas and he brought her and the children to her sister's home at 206 East Shawnee Street, Paola, Kansas.[12] The Debtor never lived in Kansas or spent any significant time there, but visited his family there on certain occasions.[13] His wife and the children, after

---

[9] The Debtor stated "None" in Question 15 (prior address of debtor) of his Statement of Financial Affairs, which requires disclosure of all premises occupied during the two years immediately preceding the filing of the bankruptcy case.

[10] September 11, 2006 transcript at pp. 10-15. The Debtor explained he testified falsely at his Section 341 meeting of creditors regarding his wife's whereabouts because he was concerned for his family's welfare and wanted to keep that information from the Plaintiff (February 28, 2006 transcript at p. 24, ll. 1-3; p. 50, ll. 6-15).

[11] Plaintiff's Exh. No. 5 (Debtor's Section 341 meeting held on April 29, 2005) at p. 22, ll. 9-12; February 28, 2006 transcript at p. 15, ll. 3-6, p. 16, ll.5-7, p. 40, ll. 17-25; September 11, 2006 transcript at p. 12, ll.6-17.

[12] September 11, 2006 transcript at pp. 6-7.

[13] The Plaintiff's exhibits corroborate the Debtor's testimony that he never lived in Kansas. An invoice (Exh. No. 11) was issued to him by Southwest Airlines on August 1, 2004 listing his address as Ashburn, Virginia. The invoice is for

a period of separation from the Debtor, left Kansas and moved to Florida where the Debtor was living to attempt "to work things out" with him.[14]

### *Constructive Service Attempt*

The Plaintiff contends the Debtor was properly served with the State Court action at his "last known address" of 206 East Shawnee Street, Paola, Kansas 66071. Evidentiary hearings were held on February 28, 2006 and September 11, 2006 at which the Plaintiff presented evidence relating to service of the State Court matter. She asserts the transcript[15] of the damages proceeding on February 11, 2005 establishes the State Court found the Debtor was properly served with the Motion for Judgment and Notice of Motion for Judgment and this Court must give full faith and credit to the finding.[16]

The Plaintiff's reliance on the transcript is misplaced. The State Court did not make a finding the Debtor was properly served in the State Court action. The State Court's statements regarding service relate to a proceeding the Plaintiff had instituted in the United States District Court for the Eastern District of Virginia and *not* the State Court Proceeding.[17] Even if the State Court had found the Debtor was properly served in the State Court action, this Court, pursuant to controlling case law, may review such finding.

---

a ticket from Kansas City to Baltimore with a travel date of August 11, 2004. A Florida Vehicle Registration was issued to the Debtor on October 14, 2004 listing his address as 402 Herlong Court, Brandon, Florida 33511 (Exh. No. 11). A 2005 Tires Plus invoice reflects an Orlando address for the Debtor (Exh. No. 11). A letter dated August 9, 2004 from Melissa Kulik reflects an address of 206 E. Shawnee Street, Paola, Kansas 66071 for her and an address of 702 Herlong Court, Brandon, Florida 33511 for the Debtor (Doc. No. 4; Exh. No. 16).

[14] February 28, 2006 transcript at p. 32, ll. 2-25.
[15] Doc. No. 50, Plaintiff's Exh. No. 4.
[16] September 11, 2006 transcript at pp. 22-23.

[17] *Id.* at pp. 45-47. The District Court in its August 27, 2007 Order found: "Hence, the quoted language does not support Lawler's argument that the Virginia judge found that Kulik was properly served in the state case." August 27, 2007 Order at p. 18.

The Debtor's testimony he never lived in Kansas was credible and unrefuted. The Plaintiff's exhibits corroborate the Debtor's testimony. A Southwest Airlines invoice, for a ticket from Kansas City to Baltimore with a travel date of August 11, 2004, was issued to the Debtor on August 1, 2004 listing Ashburn, Virginia as his address.[18] A Florida Vehicle Registration was issued to the Debtor on October 14, 2004 showing his address as 402 Herlong Court, Brandon, Florida 33511.[19] A Tires Plus 2005 invoice reflects an Orlando address for the Debtor.[20] A letter dated August 9, 2004 signed by Melissa Kulik and the Debtor reflects an address of 206 E. Shawnee Street, Paola, Kansas 66071 for her and an address of 702 Herlong Court, Brandon, Florida 33511 for the Debtor.[21]

The Debtor never resided or spent any significant amount of time in Kansas. The address of 206 East Shawnee Street, Paola, Kansas 66071 was not the Debtor's last known post-office address when the Plaintiff attempted to serve him with process in the State Court Proceeding. The statements made by the Plaintiff in the Affidavit regarding the Debtor's "last known address" were not true and had no factual basis. The Plaintiff, with all of the information then known or reasonably available to her, could not have reasonably expected mail to be received by the Debtor at 206 East Shawnee Street, Paola, Kansas 66071. The Affidavit failed to comport with the due process requirement that is an inherent part of the Virginia substitute service statute.

The Motion for Judgment and Notice of Motion for Judgment were not served on the Debtor via constructive service through the Secretary of the Commonwealth of Virginia. The State Court was without *in personam* jurisdiction over the Debtor in the

---

[18] Plaintiff's Exh. No. 11.
[19] *Id.*
[20] *Id.*
[21] Plaintiff's Exh. No. 16 (also contained in Doc. No. 4 as an attachment to the Debtor's Answer to the Plaintiff's Complaint).

State Court Proceeding. The Judgment Order does not have preclusive effect. The Judgment Order debt is dischargeable.

## **CONCLUSIONS OF LAW**

The Judgment Order was issued against the Debtor by default and the Debtor may collaterally challenge it on jurisdictional grounds. Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 734 F.2d 639, 640 (11th Cir. 1984) (*citing* as binding precedent Hazen Research, Inc. v. Omega Minerals, Inc., 497 F.2d 151, 154 (5th Cir. 1974)). Such a challenge may be determined by this Court. Rash v. Rash, 173 F.3d 1376, 1381 (11th Cir. 1999) (*holding* "A defendant may defeat subsequent enforcement of a default judgment in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction even if the court entering the default determined that it had personal jurisdiction over the defendant.").

The Plaintiff contends the Judgment Order establishes the requisite fraud elements for nondischargeability pursuant to 11 U.S.C. Section 523(a)(6) and the collateral estoppel doctrine precludes relitigation of the issues determined by the State Court. Congress requires federal courts to give preclusive effect to state court judgments whenever the courts of the state rendering the judgments would do so. *See*, 28 U.S.C. § 1738; Allen v. McCurry, 449 U.S. 90, 101 S. Ct. 411 (1980).

Collateral estoppel precludes relitigation of issues tried and decided in prior judicial or administrative hearings where each party had a full and fair opportunity to litigate the issues decided. In re St. Laurent, 991 F.2d 672, 675 (11th Cir. 1993). Collateral estoppel principles apply to dischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 285 n.11, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). The collateral

estoppel law of the state that issued the prior judgment must be applied to determine whether the judgment has preclusive effect. Id.

Virginia collateral estoppel law is the applicable law since the Judgment Order was issued by a Virginia state court. Capital Hauling, Inc. v. Forbes, 75 Fed. Appx. 170, 171 (4th Cir. 2003); Hagan v. McNallen (In re McNallen), 62 F.3d 619, 624 (4th Cir. 1995). A default judgment can create collateral estoppel pursuant to Virginia law if all the requirements of the doctrine are met. Capital Hauling, 75 Fed. Appx. at 171. A judgment shall have preclusive effect if the following elements are established by the party asserting collateral estoppel: (1) the parties to the two proceedings, or their privies, were the same; (2) the factual issues sought to be litigated actually were litigated in the prior action and were essential to the prior judgment; and (3) the prior action resulted in a valid final judgment against the party sought to be precluded in the present action. In re Rutledge, 105 Fed. Appx 455, 457 (4th Cir. 2004); Transdulles Center, Inc. v. Sharma, 472 S.E.2d 274, 275 (Va. 1996).

The Plaintiff has not established the requisite elements of collateral estoppel. The Judgment Order does not have preclusive effect because it is not a valid final judgment.

The Plaintiff attempted to serve the Debtor as a non-resident by constructive service through the Secretary of the Commonwealth of Virginia pursuant to Section 8.01-329 of the Code of Virginia.[22] The statutory requirements for constructive service

---

[22] Section 8.01-329 of the Code of Virginia provides, in part:

> Such service shall be sufficient upon the person to be served, provided that notice of such service, a copy of the process or notice, and a copy of the affidavit are forthwith mailed by certified mail, return receipt requested, by the Secretary to the person or persons to be served at the last known post-office address of such person, and a certificate of compliance herewith by the Secretary or someone designated by him for that purpose and having knowledge of such compliance, shall be forthwith filed with the papers in the action. Service of process or notice on the Secretary shall be effective on the date the certificate of compliance is filed with the court in which the action is pending.

through Virginia's constructive service statute must be strictly construed. Khatchi v. Landmark Rest. Assoc., 375 S.E.2d 743, 745 (Va. 1989). "... [I]f a statute provides for constructive service, the terms of the statute authorizing it must be strictly followed or the service will be invalid and any default judgment based upon it will be void." Id. "If the requirements of Va.Code § 8.01-329 are met, service is 'complete and conclusive.'" Pallet Recycling, LLC v. Case, No. 2005-000096-00, 2006 WL 408398, at *2 (Va. Cir. Ct. Jan. 12, 2006) (citation omitted). The statements made in the affidavit supporting constructive service "must, in fact, be true and not merely idle declarations having no factual basis." Dennis v. Jones, 393 S.E.2d 390, 393 (Va. 1990).

The issue for determination is whether 206 East Shawnee Street, Paola, Kansas 66071 was the last known post-office address of the Debtor as asserted by the Plaintiff in the Affidavit. The Code of Virginia does not define the phrase "last known post-office address." The leading Virginia opinion on the definition of "last known-post office address" is Cordova v. Alper, No. 127502, 2004 WL 516230 (Va. Cir. Ct. February 24, 2004) in which the court held:

> Guided by the controlling constitutional and statutory construction principles, this court interprets the phrase 'last known post office address of such person' as set out in Va.Code § 8.01-329, to mean the address at which a person would reasonably expect the addressee to actually receive mail, based upon all information then known or reasonably available to the addressor. The sufficiency of Cordova's purported service of process on the Secretary of the Commonwealth as statutory agent for Alper must therefore be evaluated pursuant to this test.

Cordova at *21.

The statements made by the Plaintiff in the Affidavit regarding the Debtor's last known post-office address were not true and had no factual basis. The Plaintiff, with all of the information then known or reasonably available to her, could not have reasonably

expected mail to be received by the Debtor at 206 East Shawnee Street, Paola, Kansas 66071. The Debtor never lived in Kansas or spent any significant amount of time in that state. He drove his wife and children to his sister-in-law's home in Paola, Kansas during their marital separation. He visited family in Kansas on occasion.

The address of 206 East Shawnee Street, Paola, Kansas 66071 was not the Debtor's last known post-office address when the Plaintiff attempted to serve him with process in the State Court Proceeding. The Debtor was not served with process in the State Court Proceeding pursuant to Code of Virginia Section 8.01-329. The State Court was without *in personam* jurisdiction over the Debtor when it entered the Judgment Order. The Judgment Order has no preclusive effect and cannot be enforced against the Debtor.[23] The Judgment Order debt is dischargeable and judgment is due to be entered in favor of the Debtor.

---

[23] The District Court set forth the issue for remand as follows: "This Court determines that remand is necessary to resolve the service of process issue, for, if the Virginia court did not have personal jurisdiction over Kulik, the state judgment cannot be enforced against him and this Court will not need to reach the thornier issue of whether the default judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(6)." Memorandum Decision at pp. 18-19. The case law sets forth where a court enters a judgment against a party, but is without *in personam* jurisdiction over that party, the judgment is void and may be set aside. O'Connell v. Bean, 556 S.E.2d 741, 742 (Va. 2002) (reversing and setting aside default orders and judgments as void where court lacked *in personam* jurisdiction over party); Khatchi v. Landmark Rest. Assoc., 375 S.E.2d at 745. The issue of voidness of the Judgment Order would seem to go beyond the District Court's remand directive and, accordingly, this Court does not render a determination as to whether the Judgment Order is void.

Accordingly, it is

**ORDERED, ADJUDGED AND DECREED** that this Court makes a determination on remand the State Court was without *in personam* jurisdiction over the Debtor when it entered the Judgment Order and the Judgment Order has no preclusive effect. The Judgment Order debt is dischargeable.

A separate Judgment consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 9th day of October, 2007.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge